UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

XIANDONG SHI,

*Plaintiff*,

– against –

YONGZE SONG, LIANHUA LI, SSL TRANSPORATION LLC, LINFENG SONG, PHUOC VAN TRAN, LONGJIAN JIANG, JIGUO WU, QIAO WEN WU, ZENGBIN YAO, SHUMIN LIU, ZHEN LEI, XINBIN TIAN, GUIZHEN WANG and DOE NUMBERS 1 THROUGH 10 INCLUSIVE, Individuals or Entities,

*Defendants*.

**MEMORANDUM & ORDER**
25-cv-00079 (NCM) (VMS)

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Xiandong Shi filed the instant action against defendants Yongze Song, Lianhua Li, SLL Transportation LLC, Linfeng Song, Phuoc Van Tran, Longjian Jiang, Jiguo Wu, Qiao Wen Wu, Zengbin Yao, Shumin Lui, Zhen Lei, Xinbin Tian, Guizhen Wang, and 10 John Doe defendants. *See generally* Amended Complaint ("AC"), ECF No. 33. He alleges, among other claims, racketeering in violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and RICO conspiracy, 18 U.S.C. § 1962(d). *See* AC ¶¶ 65–103. The alleged RICO predicate acts include wire fraud, bank fraud, foreign labor contracting fraud, Hobbs Act violations, and transportation of stolen goods. AC ¶¶ 43–45, 48–50.

Before the Court are two motions to dismiss the Amended Complaint, one from defendant Tran and the other from defendants Yongze Song ("Song"), Lianhua Li, SLL

Transportation LLC, and Linfeng Song (collectively, the "Song Defendants" and, together with Tran, the "Moving Defendants"). *See* Tran MTD; Song MTD 54.[1] For the reasons explained below, both Motions are GRANTED, and the Amended Complaint is DISMISSED with prejudice as to plaintiff's RICO claims and without prejudice as to plaintiff's state law claims.

**BACKGROUND**

**I. Factual Background**

This case arises out of alleged business activities between plaintiff and defendants, all connected to two Delaware farms.

Beginning in December 2015, plaintiff and defendants Song and Jiang together leased two farms from Tran. AC ¶ 31(a). In 2017, the three purchased one of the two farms from Tran together. AC ¶31(a). Plaintiff purchased the second farm from Tran himself for $2 million. AC ¶ 31(a). In connection with Shi's purchase of the second farm, Song and Jiang conspired with Tran to inflate the purchase price by $1 million dollars above the farm's actual value. AC ¶ 31(a). In exchange for their deception, they received $300,000 in kickbacks from Tran out of the inflated purchase price. AC ¶ 31(b). This conspiracy occurred despite fiduciary duties owed to plaintiff by Song (as his investment agent, to

---

[1] The Court hereinafter refers to Tran's Memorandum of Law in Support of Motion for Dismissal, ECF No. 59-2, as the "Tran MTD"; plaintiff's Memorandum of Law in Opposition to Motion to Dismiss of Defendant Tran, ECF No. 60, as the "Tran Opp'n"; and Tran's Reply Memorandum of Law in Further Support of Motion for Dismissal, ECF No. 59-3, as the "Tran Reply"; Song Defendants' Memorandum of Law in Support of Motion to Dismiss the Amended Complaint, ECF No. 56, as the "Song MTD"; plaintiff's Memorandum of Law in Opposition to Motion to Dismiss of the Song Defendants, ECF No. 55, as the "Song Opp'n"; and Song Defendants' Reply Memorandum of Law in Further Support of Motion to Dismiss the Amended Complaint, ECF No. 58, as the "Song Reply."

whom he had granted his Power of Attorney) and by Jiang (in a capacity the Amended Complaint does not explain). AC ¶ 31(a).

Plaintiff also alleges other financial malfeasance by defendants in connection with the farms. Specifically, he alleges that between 2015 and December 2019, Yao, Jiang, Song, and Wu all submitted false invoices for farm-related business expenses that they did not actually incur, costing him $1.2 million. AC ¶¶ 36–37. Additionally, in 2019, Song and Jiang instructed Wu to "misappropriate" $30,000 of plaintiff's money by using it without permission to purchase produce from wholesalers and then selling that produce on their own account, pocketing the proceeds. AC ¶¶ 39, 52.

According to the Amended Complaint, defendants were able to achieve that misappropriation at least in part because Song misled plaintiff's banks into believing he had authority to transfer plaintiff's funds. AC ¶ 48. As a result, Song was able to obtain funds and have his wife, Li, deposit them into offshore accounts she controlled. AC ¶¶ 46–48. She then transferred the money into accounts controlled by Song and their son, Linfeng Song. AC ¶¶ 46–48. Those funds were then used for the Song Defendants' unauthorized personal expenses. AC ¶ 46. Plaintiff alleges that a total of $50,000 in funds was transferred by Li to Song and Linfeng Song between November 2016 and the present. AC ¶ 47. Plaintiff additionally describes a series of wire transfers by Wu in December 2019, allegedly with the agreement and participation of the other defendants. *See* AC ¶ 43.[2]

[2] The Court notes that plaintiff does not explicitly allege that all $50,000 of the funds allegedly transferred by Li or any of the funds allegedly transferred by Wu rightfully belonged to him. *See* AC ¶¶ 43, 46–48.

The Amended Complaint further alleges that defendants Song, Li, Linfeng Song, and others drove large amounts of stolen cash and farm goods between New York, Maryland, Florida, and Delaware on various dates. AC ¶ 44.

The Amended Complaint additionally alleges that two boats that rightfully belonged to plaintiff were taken by Tran. AC ¶ 44(g). It alleges that in December 2018, Tran transported the boats and their commercial licenses from Delaware to North Carolina and registered them in his own name. AC ¶ 44(g).

On two occasions, defendants' attempts to misappropriate farm goods and funds allegedly occurred through force. On July 22, 2020, Lei, Wu, Tian, and other defendants came to the farms, loaded produce onto their truck, and threatened the farmworkers who tried to stop them with physical violence. AC ¶ 51. They were ultimately stopped by police. AC ¶ 51. A month later, on August 18, 2020, Wu and two others came to plaintiff's medical practice and attempted to take money from plaintiff in front of his wife and nephew through violence. AC ¶ 51. In the ensuing attack, plaintiff's nephew sustained a head injury. AC ¶ 51. As a result, he had to be hospitalized and continues to require ongoing medical care. AC ¶ 51.

Plaintiff further alleges that defendants attempted to conceal their wrongful conduct, including by having Wu provide perjured testimony in legal proceedings in Delaware,[3] AC ¶ 33, and by having Wu purchase Jiang's shares in the farm that plaintiff, Song, and Jiang had bought from Tran together, AC ¶ 34. According to plaintiff, that concealment has made it impossible for him to identify the full scope of his injuries. AC ¶ 64. However, he alleges that defendants' actions have nevertheless had "a pervasive and

[3] Neither plaintiff nor defendants provide additional information about the alleged Delaware proceeding.

debilitating impact on [his] business affairs and efforts to participate successfully in investment opportunities," both because his funds were misappropriated and because he has not been able to use them for other, more profitable investments. AC ¶ 63. He accordingly values his losses at approximately $3 million. AC ¶ 71.

## II. Procedural History

Plaintiff originally filed this suit on January 6, 2025. *See* Complaint 1, ECF No. 1.[4] The operative Amended Complaint was filed on May 6, 2025. *See* AC 1. That Amended Complaint raises claims of civil RICO violation under 18 U.S.C. § 1962(c) and RICO conspiracy under 18 U.S.C. § 1962(d) as well as state law claims for interference with a contractual relationship (as to defendants Tran, Jiang, and Wu only), fraudulent concealment, accounting, unjust enrichment, and fraud. AC ¶¶ 65–103.

In August 2025, Tran and the Song Defendants filed motions to dismiss the Amended Complaint. *See* Tran MTD; Song MTD. Principally, the motions argue that plaintiff's claims are untimely, insufficiently pled under Federal Rule of Civil Procedure 9(b), and fail to state a claim under Rule 12(b)(6). *See* Tran MTD 12–16; Song MTD 12–30. As a result, the Moving Defendants urge this Court to dismiss the Amended Complaint in its entirety with prejudice. Tran MTD 7; Song MTD 30. Alternatively, Tran urges the Court to dismiss plaintiff's RICO claims with prejudice and decline to exercise supplemental jurisdiction over the state law claims. Tran MTD 7. Plaintiff has opposed the motions. *See generally* Tran Opp'n; Song Opp'n.

## LEGAL STANDARD

---

4 Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

When deciding a motion to dismiss, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[5] "The issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). At the same time, plaintiff must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations and legal conclusions masquerading as factual conclusions do not suffice to prevent a motion to dismiss. *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366 (E.D.N.Y. 2005) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

"Because a statute of limitations defense can be highly fact dependent, '[a] motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations.'" *Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 501 (E.D.N.Y. 2016) (quoting *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010)). However, "[a] complaint may be dismissed as untimely when the plaintiff's allegations themselves demonstrate that relief is barred by the applicable statute of limitations." *Broccoli v. Ashworth*, No. 21-cv-06931, 2024 WL 1199549, at *2 (S.D.N.Y. Mar. 20, 2024) (quoting *Figueroa v. Ponce De Leon Fed. Bank*, No. 11-cv-07633, 2012

---

5 Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

WL 3264552, at *1 (S.D.N.Y. Aug. 10, 2012)); *see also Nachman v. Tesla, Inc.*, No. 22-cv-05976, 2023 WL 6385772, at *3 (E.D.N.Y. Sept. 30, 2023) ("Though the statute of limitations is an affirmative defense, a complaint may be dismissed for failure to state a claim if the allegations in the complaint show that relief is barred by the applicable statute of limitations."). "Moreover, '[w]here the facts needed for determination of when a reasonable person of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint . . . resolution of the issue on a motion to dismiss is appropriate.'" *Id.* (quoting *World Wrestling Ent., Inc. v. Jakks Pac.*, Inc., 530 F. Supp. 2d 486, 528 (S.D.N.Y. 2007)).

## DISCUSSION

### I. Timeliness

The Moving Defendants argue that plaintiff's RICO claims are time-barred, both because the relevant conduct occurred outside of the statute of limitations and because plaintiff was on inquiry notice of his injuries no later than August 2020. *See* Song MTD 12–13; Tran MTD 15–16. The Court agrees.

"The statute of limitations for a civil RICO claim is four years." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (first citing *Rotella v. Wood*, 528 U.S. 549, 552 (2000); and then citing *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987)). The limitations period for a civil RICO claim begins to run "when the plaintiff discovers or should have discovered the RICO injury." *Ruiz v. New York Mortg. Agency*, No. 25-cv-01837, 2026 WL 851403, at *13 (E.D.N.Y. Mar. 28, 2026) (quoting *Cohen*, 711 F.3d at 361). In other words, a plaintiff's "discovery of the injury, not the discovery of the other elements of [their] claim, is what starts the [statute of

limitations] clock." *Broccoli*, 2024 WL 1199549, at *4 (quoting *Behrens v. JPMorgan Chase Bank N.A.*, No. 16-cv-05508, 2019 WL 1437019, at *4 (S.D.N.Y. Mar. 31, 2019)).

That is true "even where the full extent of the RICO scheme is not discovered until a later date, so long as there were storm warnings that should have prompted an inquiry." *Id.* (quoting *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012)). "'Storm warnings' are 'circumstances that would suggest to a person of ordinary intelligence the probability'" that he has been injured. *Verschleiser v. Frydman*, No. 22-cv-07909, 2023 WL 5835031, at *5 (S.D.N.Y. Sept. 7, 2023) (quoting *Koch*, 699 F.3d at 151).

"Determining whether the plaintiffs were on 'inquiry notice' is judged by an objective standard, requiring evaluation of all relevant circumstances." *Koch*, 785 F. Supp. 2d at 114. "[K]nowledge of facts that would suggest to a reasonably intelligent person the probability that the person has been injured is dispositive." *Verschleiser*, 2023 WL 5835031, at *5 (quoting *Koch*, 699 F.3d at 153). Even a single incident, if indicative enough, can provide inquiry notice. *See Shah v. Meeker*, 435 F.3d 244, 250 (2d Cir. 2006) (holding that a single on-point article was sufficient to provide inquiry notice in securities fraud suit), *abrogated on other grounds by Merck & Co. v. Reynolds*, 559 U.S. 633 (2010).

Here, the Court agrees with the Moving Defendants that plaintiff had notice of his injuries by no later than August 2020, when Wu and two others came to his medical practice and tried to take money from him by physically attacking him, his wife, and his nephew. AC ¶ 51. The thrust of plaintiff's alleged RICO injury is that his business associates, including the Moving Defendants, were stealing from him, taking funds and other items of value that did not belong to them. *See generally* AC. He alleges, among

other things, that Song, Tran, and Jiang obtained an extra $1 million from him by convincing him to overpay for the farm so they could split the proceeds among themselves, AC ¶ 31(a); that Yao, Jiang, Song, and Wu took $1.2 million of his money by submitting false invoices for farm-related business expenses, AC ¶¶ 36–37; that defendants failed to distribute his share of farm proceeds, keeping his money for themselves, AC ¶ 52; that Song tricked his banks into handing over his funds, AC ¶ 48; and that Tran stole his boats, AC ¶ 44(g).

Considering those alleged injuries, it is hard to imagine an episode that would more clearly alert plaintiff that his business associates were stealing from him than an incident in which one of them attempted to physically take money from his person through violence, seriously injuring a family member in the process. And yet, that is precisely what the Amended Complaint alleges occurred on August 18, 2020: "Defendant Jiguo Wu and two others came to Plaintiff's medical practice . . . and tried to take money from Plaintiff by means of violence . . . on Plaintiff, Plaintiff's wife, and Plaintiff's nephew," leaving plaintiff's nephew with a severe a head injury. AC ¶ 51.

Accordingly, the "storm warnings" were clear by August 18, 2020, that plaintiff had been injured. *Verschleiser*, 2023 WL 5835031, at *5. As a result, the four-year RICO limitations period began no later than that day, meaning that the time to bring the RICO claims expired at the latest in August 2024—months before this litigation was commenced in January 2025. *See Koch*, 699 F.3d at 153 ("The RICO statute of limitations . . . runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry.")

Plaintiff argues that that incident, which involved "persons other than Movants," cannot have placed him on inquiry notice as to the specific defendants seeking dismissal

now. Song Opp'n at 6. However, where, as here, a plaintiff alleges a "common overarching pattern of racketeering activity," strong storm warnings as to some defendants can provide inquiry notice as to all. *See Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 255 (3d Cir. 2001) (in securities fraud case, inquiry notice existed as to all three defendant funds where storm warnings as to two funds were "overwhelming" and plaintiffs alleged a "common, overarching pattern of racketeering activity").

Here, plaintiff lists Wu as one of the defendants involved in inducing him to make fraudulent investments in the Delaware farms, along with Song, Jiang, and Tran. AC ¶ 31. He accuses Song of directing Wu to provide perjured testimony in a separate civil matter in 2021 in order to conceal their conspiracy. AC ¶ 33. He further alleges that Wu worked with Song and Jiang to "misappropriate" $30,000 of plaintiff's funds in 2019 and to submit false expense reports between 2015 and December 2019. AC ¶¶ 35–36, 39. And he identifies Wu, Song, Li, Linfeng Song, and others as being involved together in transporting stolen cash across state lines. AC ¶ 44. Thus, it is not material that the Moving Defendants were not involved in the August 18, 2020, incident, because, as the Song Defendants note, that incident should have put him on notice of the broader RICO injuries in which they allegedly had a part. *See* Song Reply 7.

Nor can equitable tolling save plaintiff's RICO claims. "Equitable tolling arguments are only successful 'if the fraudulent concealment succeeds in depriving plaintiffs of notice; otherwise[,] every fraudulent concealment claim would result in tolling.'" *Koch*, 785 F. Supp. 2d at 117 (quoting *Statistical Phone Philly v. NYNEX Corp.*, 116 F. Supp. 2d 468, 483 (S.D.N.Y. 2000)). The doctrine is designed to apply in cases "where a plaintiff is unaware of his cause of action because of defendant's fraudulent conduct." *Id.* (citing *Torre v. Columbia University*, No. 97-cv-00981, 1998 WL 386438 at

*7 (S.D.N.Y. July 10, 1998)). "The key inquiry is 'not whether the plaintiff had all the information available to him, but whether plaintiff knew enough to sue.'" *Id.* (quoting *Ruso v. Morrison*, 695 F. Supp. 2d 33, 47 (S.D.N.Y. 2010)).

Here, plaintiff points to both Wu's allegedly perjured testimony and his purported purchase of Jiang's shares of the farm as measures taken to conceal the RICO scheme from him.[6] AC ¶¶ 33–34. But it is plaintiff's burden to explain how those measures prevented him from investigating his claim or discovering the alleged RICO conspiracy following the August 2020 incident. *Koch*, 785 F. Supp. 2d at 117. He does not do so.

Specifically, plaintiff does not explain *how* Wu's testimony misled him, such that he was prevented from discovering or investigating his alleged injuries. AC ¶ 33. Indeed, he has not alleged the contents of Wu's testimony at all, including whether that testimony related to the allegedly stolen funds or to the alleged misappropriation from plaintiff's accounts or farms. *See* AC ¶ 33. In fact, he has not even identified the subject of the Delaware litigation or explained whether or how he or any defendants in this case were involved in it. *See* AC ¶ 33. Thus, he has failed to draw any connection between Wu's testimony and his discovery (or lack thereof) of his RICO injuries.

Nor does plaintiff explain how Wu's purchase of the farm shares misled him. For example, he does not say that it concealed the overinflated price he paid for the other farm

[6] The Court further finds perplexing plaintiff's position that Wu's actions in connection with the August 18, 2020, violence were *not* sufficiently related to the Moving Defendants to provide him inquiry notice of the RICO conspiracy as to them, but Wu's allegedly perjured testimony *is* sufficiently connected to the Moving Defendants to generate a fraudulent concealment argument for extending the statute of limitations for claims against them. The Amended Complaint does allege that Song directed Wu to provide the testimony, AC ¶33—but it also alleges that *all* the defendants "conducted and participated, directly, or indirectly" in the RICO predicate acts alleged, apparently including Wu's assault, AC ¶ 25. So there is no clear argument that the Moving Defendants were involved in one but not the other. Thus, plaintiff's position seems self-contradictory.

or that it deprived him of the ability to scrutinize Jiang's prior conduct in connection with the farms. AC ¶ 34. Instead, plaintiff rests solely on the conclusory statement that the purchase was "for the real and undisclosed purpose of concealing [defendants'] conspiracy to defraud Plaintiff." AC ¶ 34. That is not enough to carry his burden here either.

Accordingly, plaintiff has not shown that he was "depriv[ed] . . . of notice" of the injuries he alleges in this case, and he cannot rely on equitable tolling to rescue his claim. *Koch*, 785 F. Supp. 2d at 117.

## II. RICO Predicates

Even if plaintiff's RICO claims were not time-barred, the Court concludes that they would still be dismissed because the Amended Complaint fails to adequately plead the requisite two or more RICO predicate acts.

To plead a RICO claim, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018). "Section 1961(1) sets forth an exhaustive list of predicate 'acts' that can constitute a pattern of 'racketeering activity.'" *Id.* at 124. Relevant here, that list includes wire fraud (18 U.S.C. § 1343), fraud involving a financial institution (18 U.S.C. § 1344), fraud in foreign labor contracting (18 U.S.C. § 1351), interstate transportation of stolen property (18 U.S.C. § 2314), and Hobbs Act violations (18 U.S.C. § 1951), all of which the plaintiff has pled as predicate acts in this case. AC ¶¶ 43–45, 48–50. However, plaintiff has failed to adequately allege "two or more" of those predicate acts.

*A. Wire Fraud*

Plaintiff has failed to make out a wire fraud claim under 18 U.S.C. § 1343 because he has failed to allege with sufficient particularity that defendants used interstate wires in connection with an affirmative misrepresentation.

To make out a claim of wire fraud, a plaintiff must allege that the defendant(s) engaged in "(i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate . . . wires." *Williams*, 889 F.3d at 124. A scheme to defraud requires the defendant to make a material misrepresentation. *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 168 (E.D.N.Y. 2024) (citing *Williams*, 889 F.3d at 124). A misrepresentation is material if it is "likely to be deemed significant to a reasonable person considering whether to enter into the transaction—that is, if it misstates the economic value of the bargain." *Id.*

Wire fraud is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008). Thus, each of its elements must be pled with particularity. *See Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 125 (S.D.N.Y. 2023). That means a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014) (summary order). "In other words, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *Wells v. U.S. Bank Nat'l Ass'n as Tr. for NRZ Pass-Through Tr. VIII*, No. 19-cv-04605, 2020 WL 9816021, at *2 (E.D.N.Y. May 21, 2020).

Here, plaintiff has failed to connect the wire transfers alleged in the Amended Complaint with any specific misrepresentation made by one of the defendants. Indeed, the Amended Complaint merely alleges that "[a]t all relevant times and in furtherance of and for the purposes of executing the scheme and artifices to defraud and to obtain money by false pretenses, Defendants and each of them, on numerous occasions, used and caused to be used wire communications in interstate and foreign commerce, by both making and causing to be made wire communications." AC ¶ 43. It then lists the dates and amounts of certain wire transfers. AC ¶¶ 43, 45. However, it makes no effort to connect those transfers directly to specific misrepresentations, or otherwise, allege the misrepresentation in "detail." *IKB Int'l S.A.*, 584 F. App'x at 27. For example, it does not allege that any of the transfers occurred because of alleged lies Song or Jiang told plaintiff about the value of the farm he purchased from Tran. AC ¶ 31(a). Nor does it connect any of the transfers to the allegedly fraudulent invoices defendants submitted to plaintiff for farm-related business expenses. AC ¶¶ 36–37.

Thus, the only connection drawn between the transfers and the alleged "scheme to defraud" is the conclusory statement that the transfers were made "in furtherance of and for the purposes of executing the scheme and artifices to defraud and to obtain money by false pretenses." AC ¶ 43. But "labels and conclusions, and a formulaic recitation of a cause of action's elements" like that one "will not do" to survive a motion to dismiss. *Twombly*, 550 U.S. at 545. Because that is all that plaintiff has offered to support his wire fraud claims, he has failed to allege wire fraud as a RICO predicate act.

*B. Fraud Involving a Financial Institution*

Plaintiff's allegations relating to fraud against a financial institution under 18 U.S.C. § 1344 are similarly pled with insufficient particularity. As a fraud-based offense,

bank fraud must also be pled with heightened particularity under Rule 9(b). *Duval v. Albano*, No. 16-cv-07810, 2017 WL 3053157, at *8 (S.D.N.Y. July 18, 2017). "To satisfy this requirement, a complaint must specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Id.*

The only bank-related allegations in the Amended Complaint allege that Song and other defendants "defraud[ed] financial institutions having custody and control of Plaintiff's depositary accounts and caus[ed] said financial institutions to give up to Defendants money in their custody belonging to Plaintiff by means of false pretenses and representations, including but not limited to representing themselves as Plaintiff or as authorized agents of Plaintiff." AC ¶ 48. Those allegations do not meet the bar for heightened particularity under Rule 9(b), because they do not say when or where the alleged misrepresentations were made, which defendant made them, or which financial institutions were deceived by them. *Duval*, 2017 WL 3053157, at *8. Without those details, plaintiff has not made out the predicate act of bank fraud.

*C. Fraud in Foreign Labor Contracting*

Plaintiff's allegations regarding his fraud in foreign labor contracting claim under 18 U.S.C. § 1351 are similarly flawed. Again, because the claim sounds in fraud, it is subject to the heightened pleading requirements of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud."). Yet plaintiff's allegations include none of the details required to meet that standard. Instead, the Amended Complaint alleges, in sweeping terms, that defendants "recruited, solicited, or hired, or caused other of the Defendants to recruit, solicit, or hire, one or more persons

outside the United States, in the People's Republic of China, to work on the farms in the State of Delaware in the United States by means of materially false or fraudulent pretenses, representations or promises regarding the hours, wages, and other terms of that employment." AC ¶ 50. That allegation does not identify the specific defendants who made the statements; the specific workers who heard them; the specific contents of the promises; or the ways in which those promises were false. *See IKB Int'l S.A.*, 584 F. App'x at 27 (noting such information is required under Rule 9(b)). Thus, it is insufficient to make out the predicate act of fraud in labor contracting here.

*D. Transportation of Stolen Goods*

Finally, plaintiff has also failed to make out a predicate act for interstate transport of stolen goods under 18 U.S.C. § 2314 as to the Song Defendants or Tran. Section 2314 forbids the "transport[ation], transmi[ssion], or transfer[] in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more" when the transporter knows the items to have been "stolen, converted or taken by fraud." 18 U.S.C. § 2314. Accordingly, to state a claim under Section 2314, the plaintiff must allege that the defendant(s) "knowingly transported in interstate commerce . . . goods, wares, or merchandise knowing the same to have been stolen, converted, or taken by fraud," *Naso v. Park*, 850 F. Supp. 264, 275 (S.D.N.Y. 1994), and must allege the value of those items to be equal to or greater than $5,000, 18 U.S.C. § 2314.

Plaintiff has failed to make out a claim for interstate transport of stolen goods under 18 U.S.C. § 2314 as to the Song Defendants because the Amended Complaint fails to allege in more than conclusory fashion that any of them knew that the relevant goods and cash were stolen. Rather than include specific allegations as to any defendant's knowledge, plaintiff makes a blanket assertion of defendants' knowledge of all RICO

predicate acts. Specifically, he argues that his allegation that "Defendants, through the Enterprise, knowingly and intentionally engaged in the conduct, including the predicate RICO acts, alleged herein," AC ¶ 41, is adequate to support knowledge for this predicate act. Song Opp'n 14. This argument is unavailing. Courts in this Circuit have repeatedly held that "conclusorily pleading knowledge as to all defendants collectively is not sufficient to establish knowledge" in cases requiring it. *In re Rezulin Prods. Liab. Litig.*, No. 00-cv-02843, 2003 WL 25736933, at *3 (S.D.N.Y. Apr. 9, 2003); *Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 364 (S.D.N.Y. 2013) (The facts alleged must address the scienter of each individual defendant. Scienter is not adequately alleged through group pleading."). Accordingly, this predicate claim also fails as to the Song Defendants.[7]

Plaintiff has also failed to make out a Section 2314 predicate act as to Tran with respect to the allegedly stolen boats, because the Amended Complaint fails to allege that the value of the boats exceeded $5,000. The Amended Complaint alleges that Tran "misappropriated" two boats that belonged to plaintiff, moved them across state lines, and ultimately registered them in his own name. *See* AC ¶ 44(g). Tran argues that that allegation does not demonstrate he engaged in racketeering activity. *See* Tran MTD 14. This Court agrees. Plaintiff's allegations about the stolen boats do not indicate that the

---

[7] As the Song Defendants note, plaintiff attempts to argue that he has made out a claim for receipt of stolen property under 18 U.S.C. § 2315, even though he failed to identify Section 2315 as a RICO predicate in his Amended Complaint. Song Reply 11–12. Even if such amendment-by-pleading were proper, that claim would fail for the same reason: the Amended Complaint does not properly allege knowledge of the stolen status of the goods and funds at issue. *See Naso*, 850 F. Supp. at 275 (applying identical knowledge requirement to Sections 2314 and 2315).

boats were worth at least $5,000. AC ¶ 44(g).[8] Accordingly, plaintiff has failed to allege transportation of stolen goods under Section 2314 as a RICO predicate act as to Tran as well.[9]

******

Thus, because plaintiff has failed to plead "two or more" RICO predicate acts, his Amended Complaint also fails to state a RICO claim or, consequently, a RICO conspiracy. *Williams*, 889 F.3d at 123. Accordingly, even if plaintiff's RICO claims were not time-barred, they would still be dismissed under Rule 12(b)(6).[10]

## III. State Law Claims

The Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. "Under 28 U.S.C. § 1367(c)(3), if the Court has dismissed all of the claims over which it has original jurisdiction, it may decline to exercise jurisdiction over any non-federal claims over which it could have exercised supplemental jurisdiction." *Diaz v. D'Angel Auto Body Repair, Inc.*, No. 24-cv-04220, 2024 WL 4168628, at *2 (S.D.N.Y. Sept. 11, 2024). "In most circumstances, a district court should decline supplemental

---

8 Plaintiff's failure to include the value of the boats is particularly notable because it contrasts with his allegations about the allegedly stolen cash or farm goods, for which he *does* allege values of over $5,000. *Compare* AC ¶¶ 44, 44(a)-(f) *with* AC ¶ 44(g).

9 The Moving Defendants fail to challenge plaintiff's argument that he has properly alleged a Hobbs Act violation as a predicate for his civil RICO claim. *See* Song Opp'n 10 (citing Section 1951); Tran Opp'n 11 (same). However, the Court does not find it necessary to consider plaintiff's Hobbs Act theory because, as determined supra *II.A.-D.*, plaintiff has failed to plausibly plead at least one other predicate necessary for his civil RICO claim.

10 Plaintiff also asks the Court to grant him leave to amend. Song Opp'n 17; Tran Opp'n 20. The Moving Defendants oppose that request. Tran Opp'n 20; Song Opp'n 17. The request is denied, because the Court has determined that plaintiff's RICO claims are time-barred. Granting leave to amend would be futile here, where "better pleading will not cure" the fact that plaintiff's complaint was filed after the statute of limitations expired. *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015).

jurisdiction if all federal claims have been dismissed at the pleading stage." *Biragov v. Dreamdealers USA, LLC*, No. 21-cv-00483, 2021 WL 5303918, at *7 (S.D.N.Y. Nov. 15, 2021) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 130 (2d Cir. 2003), *as amended* (Apr. 16, 2003)). That is particularly true where, as here, the case "is at an early stage, and discovery has not even begun." *Id.*

Accordingly, because plaintiff's two federal claims—his RICO claims—have been dismissed, this Court declines to exercise jurisdiction over his remaining state law claims and dismisses them without prejudice to refile in state court.

**CONCLUSION**

For the reasons stated above, Tran and the Song Defendants' motions to dismiss are granted, and plaintiff's complaint is dismissed with prejudice as to the RICO claims and without prejudice as to the state claims with respect to those defendants.

The Clerk of Court is respectfully directed to terminate Tran and the Song Defendants from the case.

**SO ORDERED.**

*/s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated: August 27, 2026
Brooklyn, New York